UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHARLES A., <br>     Plaintiff, <br><br> v. <br><br> NANCY BERRYHILL, <br> Acting Commissioner, <br> Social Security Administration, <br>     Defendant. | C.A. No. 17-253-JJM-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff filed this action for judicial review of a final decision by the Commissioner of the Social Security Administration denying him Supplemental Security Income (SSI) benefits. ECF No. 1. Before the Court is Plaintiff's Motion to Reverse and/or Remand for rehearing. ECF No. 9. Plaintiff's appeal focuses on the Administrative Law Judge's (ALJ) decision that he had the residual functional capacity (RFC) to perform light work as defined in the regulations. He argues that the ALJ failed to weigh properly the medical opinion evidence and to evaluate Plaintiff's credibility. The Commissioner has moved to affirm the decision. ECF No. 12.

The Court finds that the ALJ's findings, specifically his decision to disregard Plaintiff's treating physician's opinion, were not supported by substantial evidence in the record. The Court therefore grants Plaintiff's motion and remands the case for reconsideration in light of this order.

## I. STANDARD OF REVIEW

A district court's role in reviewing the Commissioner's decision is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]". 42 U.S.C. § 405(g). The determination of substantiality must be made upon an evaluation of the record as a whole. The Court "must uphold the Secretary's findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *see also Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the record, the Court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Secretary. *See Colon v. Sec'y of Health & Human Servs.*, 877 F.2d 148, 153 (1st Cir. 1989). The "resolution of conflicts in the evidence is for the Secretary, not the courts." *Ortiz*, 955 F.2d at 769 (citing *Rodriguez*, 647 F.2d at 222).

## II. BACKGROUND

Plaintiff was forty-five years old on the date of the onset of his disability. He went to school through the ninth grade and was previously employed as a machine operator.

A. Medical History

Plaintiff's medical history includes diagnoses for degenerative disc of the lumbar spine, diabetes, obesity, hypertension, and high cholesterol. Dr. Joyce Alves, his primary care family physician, has taken care of Plaintiff during the entire period of his disability and took charge of coordinating his care with specialists when needed. Dr. Alves' treatment notes consistently discuss that Plaintiff suffered from chronic lower back pain, diabetes, and complications related thereto. He occasionally reported feeling anxious and depressed. He was taking multiple medications to address these medical and mental health issues.

Plaintiff was let go from his job in February 2013; he could no longer do the job because of the pain. From the records, it appears that Plaintiff's care throughout 2013 was geared toward controlling his diabetes with medication. Chronic back pain is noted in his past medical history; he took a steady dose of Percocet for this pain throughout the treatment period. Dr. Alves frequently discussed exercise and healthy eating to improve his health; Plaintiff occasionally complied with this advice. He reported that he walked for exercise during August of 2013, but the records show that he was getting minimal or no exercise from September 2013 through February 2014. In December 2013, Plaintiff's wife accompanied him to his appointment and reported to Dr. Alves that he has been irritable, is not sleeping, and is depressed. Dr. Alves screened him and noted that he had severe depression. She prescribed him

3

an antidepressant and Elavil to help him sleep. These symptoms improve in January 2014 as the Elavil was working.

In treatment notes for visits from November 15, 2013 through February 13, 2014, Dr. Alves specifically noted that Plaintiff was experiencing back tenderness when bending forward, negative straight leg raising, spasms and congestion over the paravertebral muscles in the low lumbar, high sacral area. As of February 13, 2014, Plaintiff reported that he was still looking for a job. In May 2014, Dr. Alves noted that Plaintiff had pain throughout his spine, especially in the thoracic and lumbar areas, moderate chronic congestion. That same month, Dr. Alves noted that Plaintiff "was asked to reconsider back surgery, or an evaluation at the pain clinic. He is unable to live his life as he would like due to his back." She also told him that losing weight was very important to his overall health, but would also likely help his back pain.

During a May 19, 2014 follow-up visit to address blood work, Dr. Alves noted that Plaintiff's weight was up. He told her that he was not exercising and blamed his back for his weight gain and inactivity. However, on June 4, 2014, Plaintiff reported changes in his diet and exercise routine; he was eating healthier and riding his bike every evening on the bike path. He did note back pain while riding. On June 19, 2014, he saw Dr. Alves to complete his disability papers; he told her that he could not work due to his low back pain though a stable dose of narcotics has adequately managed his pain over the years. On examination, Dr. Alves noted congestion over the L/S area, chronic in nature, no midline tenderness. Plaintiff reported that he was

exercising three to four times per week. He requested a prescription for an antidepressant to address the mental health issues he was experiencing again. On July 28, 2014, Plaintiff reported that he had numbness in both feet.

Dr. Alves' opined in an Impairment Questionnaire on August 15, 2014 that, because of his lower back pain, Plaintiff would be limited to sitting 1 hour and standing/walking 1 hour in an 8-hour workday. R. at 632. When sitting, he needed to get up, move around every 30 minutes, and not sit again for 5 to 10 minutes. Plaintiff could never lift or carry anything more than 5 pounds. Dr. Alves opined that Plaintiff's pain, fatigue, or other symptoms were "frequently" severe enough to interfere with attention or concentration. In addition, Plaintiff would miss work more than three times a month. Dr. Alves stated that the above symptoms and limitations were present since February 18, 2013 and were expected to last for at least an additional twelve months.

On September 17, 2014, he noted that he was experiencing a recent worsening of his chronic low back pain and, at his next visit, he reported that his pain was unchanged, still in the L/S area across the back and occasionally down the left leg such that he would like to try the pain clinic again. He testified at the hearing that he was hesitant to get steroid injections at the pain clinic or to go forward with surgery because he was afraid there would be complications due to his diabetes.

Buried in the record, and not specifically referenced in the ALJ's decision, is an RFC assessment completed by Dr. Donn Quinn, a state agency consultant. Dr. Quinn, who reviewed Plaintiff's medical records on November 18, 2014,

determined without performing a physical examination of Plaintiff, that he could lift and carry 20 pounds occasionally and 10 pounds frequently and could sit, stand, and walk 6 hours each in an 8-hour workday, and was not limited in his ability to push and/or pull.

At Dr. Alves' constant urging throughout 2015, Plaintiff reported that while he had not started exercising yet, he planned to start riding his bike. In June of that year, he reported that he had been walking 4-5 miles a night and his present medications controlled his back pain. Two months later, however, he reported that he had not been walking for 7-10 days because he hurt his back after bending over. Dr. Alves noted that this was a flare up of a chronic issue. She noted tenderness over the left sciatic nerve, left piriformis and left lumbar paravertebral muscles, and spasms of those muscles.

After an August 2015 referral for physical therapy rendered no substantial relief according to Plaintiff, Dr. Alves ordered a September 2015 MRI. The MRI showed an L4-5 central disc protrusion with annular fissure and mile central stenosis, leftward protrusion of the L5-S1 disc indenting the epidural fat and the left S1 nerve root with mild central stenosis, and milder lumbar discogenic changes at the other levels.

Dr. Alves issued an updated impairment assessment and determined based on her treatment history and the new MRI results that Plaintiff's limitations were unchanged from her 2014 assessment. At the hearing, Plaintiff testified that he had

shooting pain down his left side and numbness in his feet. He was only able to drive locally and spends most of his day lying down while watching television.

## B. Procedural History

On May 11, 2014, Plaintiff applied for SSI benefits, citing diabetes, hypertension, depression, severe back pain, and lumbar spine impairment as disabling conditions. That application was denied initially and on reconsideration. Plaintiff timely requested a hearing, which was held on December 26, 2014 and at which he was represented by counsel and testified. A vocational expert also testified. At the hearing, the vocational expert testified that if an individual was limited as Dr. Alves opined, that person could not perform any work.

Following the hearing, the ALJ issued a decision denying his request for benefits, finding that he was not disabled between the alleged onset date of February 18, 2013 through the date of his decision. Plaintiff requested a review of the ruling, which the Appeals Council denied. Upon this denial, the ALJ's decision became the Social Security Commissioner's final ruling and is now ripe for this Court's review under 42 U.S.C. § 405(g).

## III.   THE ALJ'S FINDINGS

The Commissioner must follow five well-known steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] Significantly, the claimant bears the

---

[1] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments, which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet

7

burden of proof at steps one through four, but the Commissioner bears the burden of proving step five, that a claimant's impairments do not prevent him from doing other work that exists in the national economy. *Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). In assessing a claim, "the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience." *Robinson v. Berryhill*, Case No. 16-CV-420-SM, 2017 WL 1843089, at *2 (D.N.H. May 8, 2017) (citing *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19, 23 (1st Cir. 1986); *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982)). A claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see also* 42 U.S.C. § 1382c(a)(3)(B).

---

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

In Plaintiff's case, the ALJ found that he had not engaged in substantial gainful activity since the alleged onset of his disability; and that he had severe impairments: diabetes mellitus with peripheral neuropathy, degenerative disc disease of the lumbosacral spine, and obesity. However, the ALJ ultimately concluded that his combination of impairments did not substantially limit his ability to perform a range of light work with some limitations; specifically, the ALJ determined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently and could sit, stand, and walk 6 hours each in an 8-hour workday. The ALJ found that Plaintiff could not perform his past work with these limitations, but there were other jobs available that he could perform such as mail clerk, assembler, and house cleaner. As such, the ALJ found he was not disabled.

The ALJ determined that he could not perform any past relevant work, but found that, considering his age, education, work experience, and RFC, there are a significant number of jobs in the national economy that Plaintiff could perform. Therefore, the ALJ found that Plaintiff was not under a disability from February 18, 2013 through the decision date.

Now the Court turns to the evidence in the case in order to consider the two pending motions.

## IV. ANALYSIS

The ALJ's decision denying Plaintiff's disability claim came down to the weight he gave to Dr. Alves' opinions and Plaintiff's credibility. In challenging his decision, specifically his RFC assessment, Plaintiff argues that the ALJ failed to give his

9

treating physician's opinion that he is disabled controlling weight. Plaintiff also argues that the ALJ's decision to discount his credibility was in error. The Court agrees with Plaintiff on both points.

### A. Dr. Alves' Treatment and RFC Opinion

Medical opinions from treating sources are generally given "more weight" because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . .." 20 C.F.R. § 404.1527(c)(2). According to the regulations, "a treating source's opinion on the question of the severity of the impairment will be given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Ormon v. Astrue*, 497 Fed. Appx. 81, 84 (1st Cir. 2012) (citing 20 C.F.R. § 404.1527(c)(2)). Conversely, if "a treating doctor's opinion is inconsistent with other substantial evidence in the record, the requirement of 'controlling weight' does not apply." *Shaw v. Sec'y of Health & Human Servs.*, No. 93–2173, 1994 WL 251000, at *3 (1st Cir. June 9, 1994).

When a treating source's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on certain factors set forth in the regulations. The factors are: (1) the "[l]ength of the treatment relationship and the frequency of examination," 20 C.F.R. § 404.1527(c)(2)(i); (2) the "[n]ature and extent

of the treatment relationship," 20 C.F.R. § 404.1527(c)(2)(ii); (3) the supportability of the opinion, 20 C.F.R. § 404.1527(c)(3); (4) the consistency of the opinion "with the record as a whole," 20 C.F.R. § 404.1527(c)(4); (5) the specialization of the source, 20 C.F.R. § 404.1527(c)(5); and (6) "[o]ther factors," which include "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in [the claimant's] case record . . . ." 20 C.F.R. § 404.1527(c)(6). "If the ALJ finds, as he may, that any treating physician's opinion is not credible, then he must comply with the regulations by explicating his grounds." *Nguyen v. Chater*, 172 F.3d 31, 36 (1st Cir. 1999). "The ALJ's judgments on such matters should be given substantial deference, provided that his opinion clearly states specific reasons for reaching his conclusion." *Resendes v. Astrue*, 780 F. Supp. 2d 125, 136-37 (D. Mass. Feb. 17, 2011).

In his decision, the ALJ noted that he would not give controlling weight to Dr. Alves' RFC opinion in making his RFC assessment (a) because she is a primary care physician, not a specialist, (b) because she failed to perform any tests to support such a limited level of function, and (c) because her "opinion is unsupported by objective medical evidence, including her own examination notes." Plaintiff argues that the ALJ should have given Dr. Alves' opinion greater weight. The Court agrees.

First, the ALJ's point that Dr. Alves' opinion should be discounted because she is "only a primary care physician" is without basis. Not only does the ALJ fail to

explain why this justifies his decision not to give her opinion controlling weight, but he also fails to indicate what sort of specialist would be required to make a disability determination for a claimant with lower back problems, obesity, diabetes, and symptoms such as anxiety and depression. On his next point, the ALJ faults Dr. Alves for failing to perform tests to justify the limitations she set. But, on the contrary, as his treating physician, Dr. Alves not only had access to the many laboratory, podiatry, physical therapy, and other test results that were sent to her incident to her primary care of Plaintiff, but she also had the ability to observe his physical capabilities during appointments and to speak to him and his wife about his functional limitations.

However, the crux of the ALJ's issues with Dr. Alves' opinion lies with his determination that Dr. Alves' RFC assessment was inconsistent with the record evidence. On the contrary, Dr. Alves rendered the RFC assessment based on her long-term treatment of Plaintiff, which included interpreting diagnostic tests, including the September 2015 MRI and blood work and otherwise coordinating his care with various specialists for his diabetes and back condition. As his treating physician, Dr. Alves presumably was aware of the evidence from the medical records that allegedly is inconsistent with the limits she placed on Mr. Alves' functioning. The ALJ specifically cites to references in the record where Dr. Alves describes mild symptoms, the efficacy of medications, his refusal to go to a pain clinic, stability of his diabetes and neuropathy, and his activity level specifically that at one point he was walking four miles a day. However, in a case involving a claimant's long-

12

standing and complex history of diabetes, back infirmities, obesity and chronic pain, such apparent inconsistencies, standing alone, are not a sufficient basis upon which to reject her opinion.

Rejecting Dr. Alves' opinion, the ALJ came up with his own assessment; the record is not clear from which source he made his light work determination. The Commissioner in her memorandum insists that the ALJ did not have to specifically discuss each source he considered, but avers that his determination was based on Dr. Donn Quinn's November 2014 RFC assessment even though he never mentioned it. After reviewing Plaintiff's records, Dr. Quinn rated his exertional limitations as occasionally being able to lift and/or carry up to 20 pounds, frequently being able to lift and/or carry up to 10 pounds, stand and/or walk for a total of about 6 hours in an 8-hour work day, sit with normal breaks for a total of more than 6 hours on a sustained basis in an 8-hour work day, and an unlimited ability to push and/or pull. R. at 113. The ALJ appears to have wholesale adopted Dr. Quinn's assessment. This was error.

Dr. Quinn does not point to any evidence in the record he reviewed to support his conclusions that Plaintiff is capable of doing any of these things. "[A]n ALJ may reach the conclusion that a claimant can perform a particular level of work, even though such conclusion is based solely on the opinion of a non-examining physician. Of course, such evidence must be 'substantial,' and, under the regulations, the weight given to a nonexamining opinion 'will depend on the degree to which [it] provide[s] supporting explanations.'" *Ormon*, 497 Fed. Appx. at 84 (citations omitted). Because

this RFC assessment was rendered by a non-examining physician without the benefit of the entire record (specifically the September 2015 MRI) who failed to provide any explanation of how he landed on the RFC limitations, the ALJ should have given Dr. Quinn's opinion little weight. Although the ALJ cites to medical records that he believes show that Plaintiff could perform light work, without a current, contradictory RFC from an examining physician (or a non-examining physician who provided supporting explanations), *see Rivera-Figueroa v. Sec'y of Health & Human Servs.*, 858 F.2d 48, 52 (1st Cir. 1988), the Court finds that the ALJ's RFC determination was not supported by substantial evidence.

### B. Credibility

The ALJ also concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Specifically, an ALJ must consider the following factors, sometimes called the *Avery* factors, when evaluating the nature and severity of a claimant's statements about his or her symptoms: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's

14

functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); *see also Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19, 29 (1st Cir. 1986). While the ALJ does not have to speak to every piece of evidence in his written decision, *NLRB v. Beverly Enters.-Mass., Inc.*, 174 F.3d 13, 26 (1st Cir. 1999), where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 309 (D. Mass. 1998). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987).

In this case, the ALJ cited to certain record references spanning eighteen months' time where the ALJ believed that Mr. Alves' report of disabling back pain was unpersuasive. Plaintiff objects, citing other evidence in the record that makes clear that his pain was real and disabling. The Court, therefore, must look to the decision and record evidence to determine whether the ALJ's credibility determination holds water. In making his credibility determination, the ALJ relies on the following points: Plaintiff refused treatment at a pain clinic, medication well controlled his pain, his allegations of pain were inconsistent with his level of activity, his gait was normal, and his neuropathy was stable.

The ALJ's two points regarding Plaintiff's pain are at odds; on one hand, the ALJ faults Plaintiff for refusing to seek treatment at a pain clinic and, on the other hand, he asserts that Plaintiff's reports of pain are not credible because the

medication he takes keeps any pain in check. In any event, the record undermines the ALJ's conclusion that Plaintiff refused the pain clinic because it shows that in September of 2014, he decided that "he would like to try the pain clinic again" as his pain was unchanged. R. at 588. Plaintiff also testified at the hearing that he was and is willing to try a pain clinic, but at the time he did not want to get steroid injections because he was concerned that the steroids would interfere with his sugar levels and negatively affect his diabetes. R. at 58. It was those concerns for his health, not laziness or intransigence, that caused him to decline treatment at a pain clinic. Plaintiff also testified that the pain medication he takes does help, but it does not completely take the pain away. R. at 61. The ALJ noted that Plaintiff's condition improved with physical therapy, but discredits him because he failed to follow up after a September 11, 2015 treatment. In fact, the treatment notes from that last appointment indicated that Plaintiff's pain as constant and that he had an MRI scheduled for the next week, presumably to find the underlying cause of that pain. R. at 650.

The Court also finds that the ALJ cherry picked certain record evidence that supported his determination that Plaintiff was more active than he let on because the record as a whole tells a different story. The ALJ points out that Plaintiff reported that in February 13, 2014, he was still looking for a job and on June 2, 2015, he was walking 4-5 miles per day. First, Dr. Alves' recommendation that Plaintiff exercise was consistently related to controlling his obesity (R. at 607, 614, 623) and not necessarily reflective of the state of his back. In April 2015, he did report that he

16

rode his bike regularly during 2014, but that he was currently not exercising. During a follow up visit with Dr. Alves one month later, Plaintiff's weight was up and he reported that he was not exercising due to his back condition. R. at 388. In addition, while he reported that he walked 4-5 miles a day in June 2015, he told Dr. Alves two months later that he had not been walking for seven to ten days due to low back pain that radiated down his left leg that Dr. Alves identified as a "chronic issue." R. at 601. The record reveals the ups and downs of someone trying to control his diabetes and obesity while living with a chronic back problem and the Court finds that the ALJ's adoption of a few highlights in the face of inconsistent evidence does not amount to a credibility determination based on substantial evidence.

V. CONCLUSION

Based on the foregoing, the Court concludes that the ALJ's decision was not based on substantial evidence. Therefore, the Commissioner's Motion for an Order Affirming the Decision (ECF No. 12) is DENIED. Plaintiff's Motion to Reverse and/or Remand (ECF No. 9) is GRANTED.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

May 10, 2018

17